UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____

AUTONATION, INC.,

    Plaintiff,

vs.

JOSEPH M. LEAVITT, III,

    Defendant.

_____/

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff AutoNation, Inc. ("AutoNation") sues defendant Joseph M. Leavitt, III ("Leavitt"), for injunctive relief, damages and other relief, and says:

**I. INTRODUCTION**

1. Until his resignation in June, 2015, Leavitt worked as AutoNation's General Manager of its Audi Peoria dealership located in Phoenix, Arizona.

2. Leavitt signed a Confidentiality, No-Solicitation / No-Hire and Non-Compete Agreement (the "Non-Compete Agreement") with AutoNation on September 22, 2014 (attached as **Exhibit A**).[1] Notwithstanding his contractual promises to the contrary, after voluntarily resigning his employment at AutoNation, Leavitt accepted employment with Larry H. Miller Dealerships ("LHMD"), an AutoNation competitor, in violation of his promises not to compete.

---

[1] Leavitt earned over $135,000 during 2014 and over $45,000 in the five months he worked for AutoNation during 2015.

## II. GENERAL ALLEGATIONS

### A. Jurisdiction and venue.

3. This is an action for injunctive relief and damages. The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest, costs and attorney's fees, and is between citizens of different states.

4. AutoNation is a Delaware corporation qualified to do business in the State of Florida, with its principal place of business in Fort Lauderdale, Florida.

5. Throughout his employment with AutoNation, Leavitt was a citizen of Arizona, resided in Arizona, and recently accepted employment with LHMD or one of its subsidiaries or affiliated entities in Tuscon, Arizona.

6. Venue in the United States District Court for the Southern District of Florida is proper in this action under 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims in this action occurred in this District. Further, Leavitt specifically agreed to venue in Broward County, Florida, and waived any objections to Broward County, Florida as the sole venue for bringing suit with respect to the Non-Compete Agreement on which this action is based (Exhibit A at ¶ 9).

7. Personal jurisdiction over Leavitt in Florida exists consistent with Florida Statute § 48.193 and Amendment XIV to the U.S. Constitution. Leavitt had extensive contacts with Florida, including attendance on multiple occasions at AutoNation's General Manager University ("GMU"), in Fort Lauderdale, Florida as follows:

- October 19, 2014 through October 23, 2014
- February 10, 2015 through February 12, 2015
- April 6, 2015 through April 10, 2015

More specifically, during October 2014, February 2015 and April 2015, Leavitt spent a total of approximately 13 days in Fort Lauderdale, Florida attending the GMU training program. Much of the materials studied by Leavitt at GMU are the very materials AutoNation seeks to protect in this litigation. Further, Leavitt contractually agreed to the state or federal courts of Broward County, Florida as the exclusive venue to resolve disputes arising from various written agreements he signed with AutoNation, including the Non-Compete Agreement on which this action is based. As such, Leavitt reasonably anticipated being required to defend this action in Florida.

8.      Leavitt breached his Non-Compete Agreement in Florida when he failed to inventory and deliver AutoNation's confidential, proprietary and trade secret material to the Vice President of Human Resources at AutoNation's corporate headquarters in Fort Lauderdale, Florida (Exhibit A, ¶ 2(b)). Leavitt also breached his Non-Compete Agreement in Florida when he failed to deliver notice in writing to AutoNation's Vice President of Human Resources at AutoNation's corporate headquarters in Fort Lauderdale, Florida, stating that he had accepted employment with an AutoNation competitor which is a material term of his Non-Compete Agreement (Exhibit A, ¶ 6(a)).

        B.      **AutoNation and the business interests this action seeks to protect.**

9.      AutoNation is engaged in the business of owning and operating more than 200 vehicle dealerships in 15 states and sells new vehicles built by 37 manufacturers. As more fully detailed below, certain high-level personnel, including Leavitt, have been provided with valuable, confidential AutoNation business information and specialized training as an ongoing investment designed to give AutoNation an advantage over its competitors. A competitor of AutoNation – like LHMD – that hires AutoNation employees who were trained under and

exposed to the information described above thereby gains an unfair competitive advantage over AutoNation in any market in which the competitor and AutoNation both operate. For this reason, AutoNation offers specific and substantial economic benefits in exchange for agreements not to, among other things, compete with AutoNation.

### 1. The valuable, confidential business information AutoNation makes available to senior management.

10. AutoNation spends millions of dollars annually, including substantial professional time gathering, organizing and analyzing valuable and confidential business information from every one of its dealerships regarding sales, service, marketing, information technology, and finance and operations, and then provides that information to the field through its regional operations. AutoNation uses personnel whose sole job responsibility is to amass, organize and analyze this valuable and confidential business information. AutoNation also conducts regular and specialized field training and monthly operating review meetings for its management teams regarding the best methods to use this valuable, confidential business information and to compile it into a form and format readily and easily useable by senior management.

11. AutoNation has developed Best Practices policies at the corporate level, which reflect material derived from every AutoNation dealership nationwide and therefore represent an aggregation of the best business strategies and techniques to run automobile dealerships based on AutoNation's own experience and confidential and proprietary business information. AutoNation's Best Practices materials have substantial economic value and are not publicly available, but were made available to Leavitt.

12. AutoNation has developed Peer Performance Reports which contain a detailed breakdown and analysis of almost every aspect of dealership operations. A significant portion of

the monthly operating review meetings is devoted to the discussion of the confidential and proprietary information in the Peer Performance Reports and includes: **(a)** a GAAP (Generally Accepted Accounting Principles) summary of revenue and gross profit; **(b)** a SG&A (Selling, General and Administrative Expenses) summary and Operating Income analysis; **(c)** an analysis within the GAAP and SG&A Operating Summaries of fees, finance and insurance gross profits, wholesale and other incentive gross profits, depreciation and amortization expenses, as well as the actual gross revenue; **(d)** detailed information and analysis of budgets; **(e)** analysis of gross revenue, expenses and inventory of the parts departments; **(f)** analysis of the gross revenue and expenses of the service departments; **(g)** analysis of gross revenue and expenses of the body shop departments; **(h)** selling and overhead expenses; **(i)** advertising expenses, budgets and the media used percentage of ads within each media group (radio, newspaper, television, and billboard) and how advertising budgets will be allocated for each form of media; **(j)** e-commerce advertising expenses, methods, gross costs and rebates; **(k)** a detailed personnel summary for fixed operations; and **(l)** a detailed report and analysis of receivables.  AutoNation's Peer Performance Reports materials have substantial economic value and are not publicly available, but were made available to Leavitt.

   13. AutoNation has developed Monthly Operating Review Sheets for each dealership that provide valuable, confidential business information regarding gross volume of sales, parts, inventory and additional financial information.  The reports also contain detailed market analyses prepared by and for the exclusive use of senior managers within AutoNation's dealerships in carrying out their duties for AutoNation.  AutoNation's Monthly Operating Review Sheets have substantial economic value and are not publicly available, but were made available to Leavitt.

14. AutoNation has developed a Dealer Central website to which senior managers within AutoNation's dealerships have access. This program contains several topics of information which are highly sensitive and treated as confidential by AutoNation. AutoNation's Dealer Central website has substantial economic value and is not publicly available, but was made available to Leavitt.

15. AutoNation has developed a Compensation Tools Program that details dealership profitability in comparison to staffing. This would allow a competitor to know what business opportunities AutoNation has targeted based on profit loss/gain and where unfair opportunities could exist to exploit those AutoNation figures. AutoNation's Compensation Tools Program has substantial economic value and is not publicly available, but was made available to Leavitt.

16. Each of the aforementioned programs were designed and intended to be for the exclusive use of AutoNation and to provide senior managers, like Leavitt, with valuable, confidential business information that is neither readily available to other persons nor permissibly disseminated to the public.

17. Each senior manager within AutoNation's dealerships is privy to this valuable, confidential business information listed above and is encouraged to utilize the information with their management teams. Senior managers are also encouraged to implement strategies to improve future operations based on certain confidential reports and information they receive and review.

2. **Other valuable information and specialized training AutoNation provides to senior managers.**

18. AutoNation spends considerable time and significant resources training senior managers in the AutoNation method of doing business. Senior managers are carefully mentored

within the AutoNation system and receive training as to AutoNation's strategies, attend monthly meetings, and attend periodic meetings in Fort Lauderdale, Florida regarding overall company strategy, all at the expense of AutoNation.

19. All senior managers attend meetings where advertising plans, media pricing campaigns and future media budget plans are discussed in detail.

20. AutoNation has expended, and continues to expend, tremendous effort and cost to implement and specially train senior managers regarding AutoNation's concepts and strategies for competing in the highly competitive automotive industry. In addition, AutoNation provided Leavitt with confidential documents and information as defined in his Non-Compete Agreement.

### C. Leavitt's access to AutoNation's valuable and confidential business information and specialized training.

21. Leavitt was hired on December 6, 2010, to work as the General Manager of AutoNation's Audi Peoria dealership.

22. As a General Manager with AutoNation, Leavitt had primary responsibility for the operation, control and supervision of the management teams and reported directly to a Market President. Leavitt's duties and responsibilities – for which he obtained over $135,000 in annual compensation during 2014 and over $45,000 in the five months he worked for AutoNation during 2015 – included managing, supervising, controlling and operating the Audi Peoria dealership. Leavitt bore primary responsibility for the dealership operations and implementation of AutoNation's Best Practices and Peer Performance Reports.

23. Senior managers within AutoNation's dealerships typically attend various manufacturer training seminars at the expense of AutoNation.

24. Leavitt was provided copies of the information discussed at monthly operating review meetings conducted by its Market President. Included in these monthly meetings were discussions about AutoNation's Best Practices policies and a written monthly Peer Performance Report.

**D.  Leavitt's promises not to compete with AutoNation and his breach of those promises.**

25. Again, Leavitt signed a Confidentiality, No-Solicitation / No-Hire and Non-Compete Agreement on September 22, 2014 (Exhibit A).

26. Restrictive covenants (i.e., non-compete agreements) were implemented by AutoNation for reasons including, but not limited to: **(a)** protection of AutoNation's confidential and proprietary information; **(b)** avoidance of certain damaging practices AutoNation was aware of in the highly competitive and transient vehicle repair industry; **(c)** avoidance of solicitation or attempts to solicit current dealership employees by former employees who had left a dealership; and **(d)** avoidance of unfair competition by former dealership employees against AutoNation in the highly competitive automobile industry pursuant to the defined durational and geographical limits in the non-compete agreements. The Non-Compete Agreement signed by Leavitt, as more fully described herein, expressly and unambiguously defines the terms and conditions of the prohibited activities.

27. Leavitt's Non-Compete Agreement provides that:

Except to the extent prohibited by applicable law, Employee hereby agrees that he/she shall not during the period commencing on the date hereof and ending twelve (12) months after the separation of Employee's employment or engagement with the Company, whether the separation is initiated by Employee or the Company (for any reason), directly or indirectly, alone or in any other capacity, engage in selling, advertising, marketing, .leasing, or servicing of any new or used vehicles or in the wholesale or retail supply of parts with respect thereto, or engage in any additional related or other businesses that the Company or any subsidiary or affiliate of the Company engages in at any time, including by

working for, owning an interest in, being associated with or providing services to any company or business (or any subsidiary or affiliate of such company or business) engaged, directly or indirectly, in any of the foregoing activities and including without limitation, by being, acting or engaging as a partner, joint venture, officer, director, member, employee, consultant, agent, independent contractor, stockholder, landlord or lessor of, or lender to, any company or business or any subsidiary or affiliate of such company or business that is engaged, directly or indirectly, in any of the foregoing activities anywhere (i) within a fifty (50) mile radius of the dealership or office at which Employee is employed by the Company or a subsidiary or affiliate of the Company; or (ii) within a ten (10) mile radius of any new or used vehicle dealership owned or operated by the Company or any subsidiary or affiliate of the Company located anywhere in the United States at the time Employee commences to engage in such activity (the geographic area described in clause (i) and clause (ii) above are referred to herein as the "Restricted Area"). . .

(Exhibit A, at ¶ 6(a)).

28. In the event of a breach of a non-compete agreement, and because AutoNation cannot be adequately compensated as a matter of law, the non-compete agreement provides for injunctive relief and other equitable relief, as well as the right to damages (Exhibit A, at ¶ 7).

29. Despite the express and unambiguous language in the Non-Compete Agreement, Leavitt has accepted a position with LHMD, which is a direct competitor of AutoNation.

30. Leavitt's acceptance of employment with LHMD is a material breach of the express and unambiguous terms of his Non-Compete Agreement with AutoNation.

## COUNT I – INJUNCTIVE RELIEF AND DAMAGES

31. AutoNation re-alleges and incorporates by reference the allegations in paragraphs 1 through 30 of its complaint above as if fully set forth herein.

32. Unless Leavitt is enjoined from directly competing against AutoNation in automotive industry, AutoNation will suffer immediate and irreparable harm.

33. AutoNation has no adequate remedy at law to prohibit Leavitt from directly competing against AutoNation in the automotive industry.

34. Leavitt has breached the restrictive covenant (i.e., the Non-Compete Agreement) he signed with AutoNation.

35. Because AutoNation cannot be adequately compensated as a matter of law, the Non-Compete Agreement provides for injunctive relief and other equitable relief as well as the right to damages (Exhibit A, at ¶ 7).

36. By signing the Non-Compete Agreement, Leavitt acknowledged and agreed to the remedies provided to AutoNation in the event of a breach.

37. Despite the express and unambiguous language in the Non-Compete Agreement, shortly after Leavitt resigned he went to work for an AutoNation competitor.

38. AutoNation has a legitimate business interest in prohibiting Leavitt from directly competing with it in the automobile industry.

39. Unless Leavitt is enjoined from directly competing against AutoNation in the automobile industry, AutoNation will suffer immediate and irreparable harm.

**WHEREFORE**, AutoNation respectfully requests that the Court:

A. Enter a temporary and permanent injunction enjoining and restraining Leavitt, his agents, servants, employees, attorneys and all others in active concert or participation with him who receive actual notice thereof by personal service or otherwise, for a period of one (1) year from:

1. Communicating with or soliciting, or encouraging any other person to communicate with or solicit for employment or in an attempt to conduct business with, any person who is or was or during said one year period a customer, supplier, employee, agent or representative of AutoNation, or any subsidiary or affiliate of AutoNation,

    2. Working directly or indirectly in any capacity for any AutoNation competitor within the Restricted Area or establishing, engaging, owning, managing, operating, controlling, or being a director, officer, employee, salesperson, agent, lender or representative of any business in competition with AutoNation, and

    3. Requiring Leavitt to comply with the provisions of the Non-Compete Agreement;

  B. Enter judgment for damages in favor of AutoNation and against Leavitt, in such amount as is proved at trial, together with interest thereon;

  C. Pursuant to the Non-Compete Agreement, award to AutoNation its costs and expenses of this action, including reasonable attorneys' fees, appellate fees and disbursements; and

  D. Grant to AutoNation such further relief as this Court deems just, necessary and proper.

              Respectfully submitted,

              s/ *Jon K. Stage*
              Jon K. Stage (Florida Bar No. 779430)
              Email: jstage@stearnsweaver.com
              Eric K. Gabrielle (Florida Bar No. 160725)
              Email: egabrielle@stearnsweaver.com
              **STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**
              200 East Las Olas Boulevard – Suite 2100
              Fort Lauderdale, Florida 33301
              Telephone: 954-462-9500
              Facsimile: 954-462-9567
              *Attorneys for Plaintiff*

#4404392 v1

Page **11** of **11**